UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARIAM HASSAN,

             Plaintiff,

vs.

CITY OF NEW YORK, NYPD, John and Jane Does 1-10.        Defendants.

Civil Case No.

Complaint and Jury Demand

## Introduction

Mariam Hassan was peacefully and lawfully exercising her Constitutional Rights to assemble, free speech, and protest when an officer charged at Mariam. Without warning, an NYPD officer charged at her. She barely had time to react before the officer struck her, threw her to the ground, and stepped on her. The Defendants' conduct was an extension of the City of New York's custom, policy, and practice of responding to peaceful protests with unlawful use of force and arrest, thereby seeking to unlawfully stifle protests and the legitimate concerns of citizens. The City of New York, by and through the NYPD, has engaged in a well-documented scheme to impose violence upon those who are peacefully exercising their Constitutional Rights. Mariam Hassan comes before this Court and seeks to hold the Defendants accountable for their conduct and inhibit the unlawful practices and policies of the City of New York so that New Yorkers can exercise their rights without the fear of being subject to unlawful force and illegal practices, polices, and procedures.

## **NATURE OF THE ACTION**

1. This lawsuit seeks the lawful redress of the civil rights violations against the May 18, 2024, Bay Ridge peaceful protesters.

2. NYPD Officers violated Plaintiff's rights at the direction of the Mayor and City of New York Practices and Procedures, unjustly used excessive force, assaulted, battered, and abused Plaintiff. Defendants violated Plaintiff's procedural and substantive due process rights. As a result, Plaintiff suffered and continue to suffer from their enumerated injuries.

3. The City of New York is liable for its deliberate indifference and negligence with respect to customs, policies and practices, and failure to supervise and discipline police officers, ultimately creating conditions that permitted, condoned, and preserved an environment in which the most violent police officer believed he would be insulated from swift and effective investigation, prosecution, and conviction for his/her most brazen acts of brutality. The inevitable result of this institutional, repeated indifference is the extraordinary physical and emotional injuries inflicted upon Plaintiff.

## **JURISDICTION**

4. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Plaintiff asserts the following claims pursuant to the United States Constitution, New York Constitution, Section 42 U.S.C.§ 1983, New York State law, as well as common law.

7. On or about June 18, 2024, within 90 days after the claims herein arose, Plaintiff served a Notice of Claim setting forth the name and addresses of the Plaintiff and her attorneys, the nature of the claim, the time when, the place where, and the manner in which the claim arose, and the items of damage and injuries claimed to have been sustained for far as then practicable, upon the City of New York.

8. This action commenced within one year and 90 days after the claims herein arose.

9. Plaintiff 50-H Hearing was held on or about October 24, 2024.

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), as Defendant City of New York resides in this district and the acts giving rise to this Action occurred in this District.

## JURY DEMAND

11. Plaintiff demands a jury trial on each and every claim to which are legally entitled to a jury.

## PARTIES

12. Plaintiff is a resident of Kings County, New York.

13. At all times herein, Defendant City of New York was and is a municipal entity created pursuant to the laws of the State of New York. Defendant City of New York operates and maintains the New York City Police Department ("NYPD"). The NYPD is an agency, arm and extension of the City of New York. Defendant City of New York and NYPD are the employers of the Officers and liable for their conduct.

14. At all relevant times the Officers were acting under color of State Law, including acting as police officers for the City of New York. They were acting within the scope of their employment as police officers and agents for the City of New York when they engaged in the conduct described herein.

15. Defendants John and Jane Does 1-10, are named individually and in their official capacity as Officials and/or Police Officers ("Defendant Police Officers" or "Officer(s)") and were at all relevant times acting under the color of state law as Police Officers. These officers engaged in conduct that violated the Plaintiff's rights, but whose identities are not yet known.

16. Defendant Police Officers are being sued in their individual and official capacities, as well as agents and employees of the City of New York.

17. At all times relevant herein, the City Officials and individual officers were employed by the City and acted under color of law in the course and scope of their duties and authority as officers, agents, servants, and employees of the NYPD and the City.

18. At all relevant times, the City Officials and individual officers violated the established rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the New York Constitution of which reasonable officials in their respective circumstances would have known.

19. At all times relevant to this Complaint, the City Officials were high-level officials of the City of New York who had authority to establish policy for the City and the NYPD.

20. Section 3 of the New York City Charter provides: "The mayor shall be the chief executive officer of the city."

21. Section 8 of the City Charter provides that the Mayor "shall exercise all the powers vested in the city" and "shall be responsible for the effectiveness and integrity of city government operations and shall establish and maintain such policies and procedures as are necessary and appropriate to accomplish this responsibility."

22. Section 431 of the City Charter provides: "There shall be a police department the head of which shall be the police commissioner."

23. Section 431 further provides that the Police Commissioner "shall be appointed by the mayor" and "may be removed from office" by the Mayor.

24. Section 434 of the City Charter provides that the Police Commissioner "shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department."

25. Section 434 further provides that the Police Commissioner is the "chief executive officer of the police force" and "shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department."

26. The NYPD Chief of Department is the highest-ranking uniformed officer in the NYPD. All uniformed members of the NYPD are required to follow orders issued by the Chief of Department.

27. The NYPD Chief of Department oversees and supervises all NYPD operations, including patrol operations.

28. The City of New York is liable under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), when the policies, practices, and customs established and/or implemented by the City Officials are the moving force of a constitutional violation.

## STATEMENT OF FACTS

29. Bay Ridge maintains New York's largest Arab and Muslim population.

30. There was a rally and march in Bay Ridge in May of 2024, which was met with violent and excessive force from the NYPD.

31. Though NYPD Officers were present at the beginning of the peaceful march, the number of NYPD Officers surged at the end of the march in comparison to the number present at the start of the event.

32. The NYPD Officers kettled the crowd, a practice that involves enclosing individuals with the intent to take police action without individualized probable cause.

33. The crowd of protestors began attempting to move to the sidewalk as directed by NYPD, but for many it was ultimately to no avail because there were far too many people and nowhere to move as the crowd was kettled by officers and their vans.

34. The NYPD Officers knew the entire crowd could not move to the sidewalk in such a short period of time. Yet mere minutes after announcing the crowd to move to the sidewalk, NYPD Officers began delivering a ferocious assault against the peaceful protestors.

35. NYPD Officers engaged in excessive force in detaining and arresting Plaintiff and other peaceful protestors.

36. Plaintiff feared for her life and serious injury due to the callous behavior of the officers.

37. Plaintiff was falsely arrested and detained against her will and taken to One Police Plaza ("1PP").

38. Plaintiff was severely restrained and injured by handcuffs on her way to 1PP.

39. Upon information and belief, the charges against the Plaintiff are merely a pretext to unlawfully disrupt Plaintiff's constitutionally protected rights and remove her from the peaceful protest.

40. Plaintiff was exercising her Constitutional Rights to protest and assemble in a peaceful manner in Kings County, New York.

41. The police officers were on duty and in uniform.

42. The police officers were acting within the scope of their authority and duty as NYPD officers on behalf of the City of New York and providing police services at the Protest.

43. Without warning, an NYPD officer charged at her due to her speech and exercising her rights.

44. She barely had time to react before the officer struck her, threw her to the ground, and stepped on her.

45. The officers used extreme, unjustified and unnecessary force upon Plaintiff.

46. The force used by the officers caused Plaintiff to suffer severe physical and psychological injuries, including but not limited to, pain all over her body, constant and debilitating pain and suffering.

47. Moreover, the officers failed to render aid to Plaintiff.

48. Additionally, the City of New York has exhibited a policy, customs, and procedures that are aimed at inhibiting lawful protests.

49. Plaintiff was peacefully protesting when she had her rights violated by the Defendants.

50. In violating Plaintiff's rights, the officers were employing the policy, custom, and procedure of the City that condoned and encouraged unlawful force and arrest as a way to respond to protesters exercising their Constitutional Rights.

51. Plaintiff suffered severe injuries, pain and suffering as a result of the officers' actions, inactions and violations of the law.

52. Officers' conduct had the desired effect of chilling and inhibiting Plaintiff's exercise of her right to protest.

53. Plaintiff is terrified of police and is scared to protest and exercise her rights to protest, free speech and to assemble.

54. Plaintiff suffered fear and apprehension as a result of the officers' conduct and caused her great alarm and fear for her personal safety and fear of injury and death.

55. Plaintiff's injuries include severe permanent emotional, physical and psychological trauma and injury.

56. The NYPD's May 18, 2024, excessive force against the peaceful protestors is in line with a long list of similar operations the NYPD has conducted under this current and prior Mayors.

57. What followed from the murder of George Floyd in Minneapolis, Minnesota, were hundreds of peaceful marches across the United States of America.

58. None were more marked by NYPD's kettling and violence than the event of June 4, 2020 in the South Bronx neighborhood of Mott Haven where peaceful marchers were methodically corralled only to be violently attacked and arrested.

59. The Mott Haven peaceful marchers filed a civil action in the Southern District of New York titled Sierra v. City of New York, 20-cv-10291.

60. In Sierra, the Plaintiffs alleged that as peaceful marchers yelled "Let us go, let us go," The NYPD did not permit peaceful marchers to leave the kettle. The phalanx of officers pressed in, pushing the protesters tightly together. Police officers with batons and shields struck people at the edge of the encircled group, thrust raised bicycles into trapped protesters, and indiscriminately sprayed them with pepper spray. In some instances, officers pulled down face masks and pulled up face shields to pepper spray protesters directly in the face. The protesters had committed no acts of violence or resistance that would justify this excessive and unreasonable use of force. Many protesters were left injured and bleeding. Some protesters fainted, or lost consciousness and went into convulsions. Sierra Complaint at ¶¶53-60.

61. On June 3, 2020, the NYPD carried out a similar operation in Brooklyn: NYPD Officers surrounded non-violent protesters who were critical of the NYPD and its history of racially biased policing; and as they later did in Mott Haven, NYPD Officers violently arrested protesters in retaliation for their exercise of free speech. The circumstances of the NYPD's June 3 operation in Brooklyn are described in detail in another federal lawsuit filed on July 15, 2020. In Gelbard et al. v. City of New York et al., No. 20 Civ. 3163 (E.D.N.Y.), filed July 15, 2020, Plaintiffs described a similar June 3, 2020 operation where they asserted that the NYPD's violent actions are "[not] unique" and are intended "to assert dominance, discourage

further protests, and punish expression that the police perceive to be hostile and threatening to their interests." Gelbard Complaint ¶¶ 5, 12.

62. Summarized in the Gelbard Complaint: The NYPD's brutality toward Plaintiffs is neither accidental nor unique. It is a product of the NYPD's deliberate plan to surround peaceful protesters, charge them with batons, and violently assault them. . .While the violence inflicted by the NYPD has no justification, it has a clear purpose: to assert police dominance, discourage further protests, and punish expression that the police perceive to be hostile and threatening to their interests. Gelbard Complaint ¶¶ 5, 12.

63. In yet another case filed in 2020, Payne et al. v. de Blasio et al. No. 20-cv-08924 (S.D.N.Y.), Plaintiffs describe a similar incident to the event and describe it as "police violence" [] "condoned and even promoted" by the Mayor and NYPD leadership as "retaliation for the peaceful marchers message." Payne Complaint ¶¶ 1, 3, 35-60.

64. Payne, People of the State of New York v. City of New York et al., No. 21-cv-322; Gray et al v. City of New York, et al., 21-cv-6610; and Rolon et al. v. City of New York, et al., 21-cv-2548 were later consolidated as In Re: New York City Policing During Summer 2020 Demonstrations.

**Count I. 42 U.S.C. § 1983 FIRST AMENDMENT CLAIMS BY PLAINTIFF AGAINST ALL DEFENDANTS AND PURSUANT TO NEW YORK STATE CONSTITUTION**

65. Plaintiff realleges and incorporate by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. At all times herein, Plaintiff was engaging in her rights to free speech and assembly as protected by the First Amendment of the Constitution.

67. She was assaulted, thrown to the ground, and stepped on by NYPD officers and agents.

68. In committing the acts and omissions complained of herein, the defendants acted under color of state law, individually and in concert, to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution by directing the Plaintiff to be targeted for law enforcement action in retaliation for their free speech.

69. At all times herein, Plaintiff was seized, restrained or arrested without the requisite individualized probable cause for their arrest, detention or restraint.

70. As a result of the foregoing, Plaintiff was deprived of liberty, suffered specific and serious bodily injury, emotional distress, costs, and expenses, and was otherwise damaged and injured.

71. The unlawful conduct of the City, the City Officials, and the individual officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## COUNT II- EXCESSIVE FORCE/UNLAWFUL USE OF FORCE IN VIOLATION OF UNITED STATES CONSTITUTION AND NEW YORK CONSTITUTION

72. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

73. Upon information and belief, each officer, intentionally and/or recklessly used and attempted to use unreasonable, unlawful and/or excessive force on Plaintiff, including but not limited to, striking Plaintiff, thereby depriving Plaintiff of her right to be free from assault, battery, the use of unreasonable, unlawful, excessive, and improper force, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, NYS Constitution, New York State laws, and the common laws of New York.

74. Officers' actions were without any legal justification, and the force used upon Plaintiff was excessive, unwarranted, inappropriate, reckless, negligent and wholly improper.

75. Officers' use of force against Plaintiff was not justified as he posed no threat to the officers' that required the use of force used against him.

76. Officers' actions caused Plaintiff to fear for her life and safety, and at no point was any of the contact and attempted contact consensual or privileged.

77. As a direct and proximate result of each officers' acts and/or omissions, Plaintiff suffered and continues to suffer significant severe physical and emotional injuries.

78. As a direct and proximate result of the above unlawful conduct, Plaintiff was caused to suffer personal injuries, violation of her rights under Federal, State, and common law, rights to be free from unlawful use of force, assault, and battery, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

79. As a result of Officers' impermissible conduct, Plaintiff demands judgment against Officers in a sum of money to be determined at trial.

## COUNT III- ASSAULT AND BATTERY

80. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

81. Officers approached Plaintiff charged at her, threw her to the ground, and stepped on her, causing her to suffer substantial injuries.

82. The officers approached Plaintiff in an aggressive and hostile manner, causing him to fear for her safety and be apprehensive of the bodily harm inflicted upon him by the Officers.

83. Indeed, plaintiff endured the loss of circulation and numbness in her fingers, due to the zip tie being so tight and continues to suffer the physical and psychological effects of Defendants' conduct.

84. As a result of the Officers' unlawful conduct, Plaintiff demands judgment against Officers in a sum of money to be determined at trial.

## IV- VIOLATION OF RIGHTS TO FREE SPEECH, ASSEMBLY, AND PROTEST, AND RETALIATION IN VIOLATION OF UNITED STATES CONSTITUTION AND NEW YORK CONSTITUTION

85. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

86. The Officers visited brutal violence upon Plaintiff simply because he was exercising her rights under the United States and New York Constitutions to free speech, assembly, and protest.

87. The Officers did not like the fact that Plaintiff was protesting against the genocide happening in Palestine, and therefore sought to inhibit her speech, assembly, and right to protest by using excessive, unwarranted and unlawful force upon him.

88. As police officers, Defendants had the aim of inhibiting the exercising of Plaintiff's rights, discouraging same, and inflicting physical harm upon him so that he would not continue to protest, assemble and use her speech to object to police brutality.

89. Officers retaliated against Plaintiff for her assembling, protesting, and speaking out against Genocide, as are her Constitutional Rights.

90. Officers succeeded in their violation of Plaintiff's rights to speech, assemble, and protest when they caused her significant injuries that inhibited him ability to exercise these rights.

91. As a result of Officers' unlawful conduct, Plaintiff demands judgment against Officers in a sum of money to be determined at trial.

## V. *Monell* Liability/Respondent Superior/Failure to Supervise/Failure to Monitor/Negligent Hiring/Retention/Training/Municipal Liability

92. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

93. The City of New York, via the NYPD, has effectively ratified the misconduct of the Officers. The violation of Plaintiff's Federal, State, and common law rights and resulting injuries were

further directly, foreseeably, proximately, and substantially caused by conduct chargeable to the City of New York.

94. Said conduct included, but is not limited to, the acts of the Defendant agents and officers in the performance of their duties, which amounted to deliberate indifference to the rights of persons, including Plaintiff, who was subject to excessive force, unlawful force and arrest, negligence, and other misconduct by the Defendant officers, who the NYPD knew had demonstrated a history of misconduct involving similar violations of common law, State, and Federal rights and causes of action.

95. Upon information and belief, the City of New York and the NYPD also failed to use reasonable care and/or was negligent in the hiring and retention of its employees, officers, and/or servants, failed to and/or was negligent in the retention, monitoring, and/or supervision of the individual Defendants, and failed to provide the appropriate safeguards to prevent the negligent use of force, assault, battery, and use of excessive force in violation of Plaintiff's rights as complained of herein.

96. It is clear that there is a need for monitoring and supervision regarding the use of force, assault, battery, and negligence, and that there is deliberate indifference to the use of same, particularly against protesters and those exercising their Constitutional Rights.

97. The City of New York and the NYPD failed to train officers that even if Plaintiff was a suspect in some crime, they nonetheless cannot commit an assault or battery, and cannot employ unreasonable, unlawful, and excessive force upon that individual, particularly significant use force such as striking Plaintiff in a vicious and heavy-handed manner.

98. Additionally, the City failed to train its officer on how to deal with protesters exercising their constitutional rights, and to not use force upon them or unlawfully discourage same.

99. This omission is glaring in light of the protests that regularly occur in New York City and the City's duty to protesters and those exercising their constitutional rights.

100. The City of New York also failed to train its officers that if they see other officers engaged in misconduct/unlawful activity, such as the unlawful use of force and inhibiting the exercise of free speech, protest, and assembly in this matter, they must intervene to prevent it.

101. As in the case of Defendant-Officers' past unlawful use of force and employment of unlawful and excessive force, there was no need to use any force, let alone significant force, even if Plaintiff was suspected of committing a crime.

102. City of New York and the NYPD, including its Police Chief and superior officers, thus created a tacit policy and custom of permitting the Defendant-Officers' unlawful actions to continue with their imprimatur and approval.

103. Indeed, upon information and belief, the Defendant-Officers involved have had numerous lawsuits filed against them for use of unlawful and excessive force. This is consistent wit Police Officers' conduct policing protests throughout New York City where they do so with violence and excessive force.

104. Upon information and belief, the Defendant-Officers also had several CCRB/IA complaints lodged against them for false arrest, unlawful, unnecessary, and excessive force, before they used the unlawful force and employed a false arrest against the Plaintiff.

105. Despite the lawsuits and complaints for excessive force and unlawful arrest prior to the complaint at hand, the Defendant-Officers were not re-trained, provided additional supervision, or additional monitoring of their performance so as to prevent the unlawful use of force upon Plaintiff. The City of New York does not take police misconduct seriously, and has a history of doing so.

106. Had the Defendant-Officers been retrained, monitored, and supervised given their histories, the unlawful use of force and actions against Plaintiff could have been prevented as the Defendant-Officers knew that they would be held accountable and would not engage in the conduct complained of herein.

107. The failure of the City of New York and the NYPD to monitor, supervise, and retrain the Defendant officers was glaring in light of their histories of complaints and lawsuits for excessive, unlawful, and unnecessary use of force and other misconduct. The Defendant officers should not have been on the streets.

108. Upon information and belief, the City of New York and the NYPD also failed to track and meaningfully monitor and investigate the uses of force by the Defendant-Officers such that the City of New York and the NYPD failed to monitor, supervise and control the Defendant-Officers. These acts and omission demonstrated callous disregard with respect to the propensity of the Defendant-Officers, and all but guaranteed that they would eventually use excessive and unlawful force against the Plaintiff.

109. The City of New York and the NYPD were aware, or should have been aware, with any level of diligence, of the shockingly high number of incidents involving unlawful use of force, misconduct, and excessive force by its officers, and in particular the Defendant-Officers named herein, but took no action to rectify the obviously deficient IA process, monitoring, and supervision.

110. The acts and omissions of the City of New York and NYPD effectively condoned Defendant-Officers' past conduct of engaging in unlawful and excessive force, and the Defendant-Officers knew that they would not be held accountable in any meaningful way if they used unlawful and excessive force, such as in the case of Plaintiff.

111.    Upon information and belief, the City of New York and the NYPD do not meaningfully investigate CCRB and Internal Affairs Complaints. The City of New York and the NYPD purport to investigate complaints, but in reality, conduct sham investigations that are aimed at covering up police misconduct.

112.    Rather than properly adjudicate Internal Affairs/CCRB investigations, and meaningfully investigate complaints, the City of New York and the NYPD skew the investigations in favor of officers so that the complaint is either not-sustained due to alleged equipoise in evidence, or incapable of being adjudicated against the officer. Moreover, in many cases, including ones involving the Defendant-Officers, a review of a complaint is cursory at best, and usually quickly closed without any meaningful investigation.

113.    Upon information and belief, the deficient Internal Affairs investigations, including those involving the Defendant-Officer's previous conduct, also include not retaining evidence relevant to Internal Affairs investigations, (e.g. such as video), failing to speak with relevant witnesses, failing to interview complainants, misinterpreting data, ignoring evidence, giving officers an opportunity to change their stories so as to escape liability, misclassifying IA complaints so that they are not investigated, crediting an officer's version of events simply because it is an officer, discounting eyewitness testimony in favor of officers, and simply not investigating all complaints. Upon information and belief, this defective way of conducting IA investigations was how investigations into the unlawful use of force by the Defendant-Officers were handled.

114.    Defendant City of New York and the NYPD maintained a policy whereby, upon information and belief, they failed to meaningfully investigate IA and CCRB complaints, if they investigated them at all, thereby creating a policy and custom whereby officers felt that

they could violate the rights of citizens with impunity and they would not be held accountable, particularly in the case of the Defendant-Officers.

115.    Officers used unlawful and significant force upon Plaintiff constituting improper, unlawful, and excessive use of force.

116.    Upon information and belief, Defendants have numerous complaints lodged against them prior to the incident with Plaintiff. The City Of New York and NYPD had ample notice of the Defendant-Officers' histories, propensities, and misconduct, similar to the unlawful conduct they subjected Plaintiff to. Those incidents do not appear to have been meaningfully investigated, and despite the obvious need for intervention, the NYPD failed to take any corrective action related to these officers, such as increased supervision, training, taking them off the street, and reassigning them to non-enforcement duties, or not deploying them for protest duties.

117.    Upon information and belief, Defendant officers have been sued numerous times for the unlawful use of force for incidents prior to the unlawful use of force against Plaintiff. Yet Defendant City of New York and NYPD failed to investigate these unlawful uses of force and failed to take any meaningful steps to ensure that the unlawful use of force would not continue, such that the Defendant City of New York was indifferent to the right of Plaintiff to be free from excessive force, and all but guaranteeing that those citizens who encountered these individuals would be subject to excessive force.

118.    The City of New York and the NYPD are liable for the conduct of the Defendant Officers pursuant to respondent superior as Defendant-Officers were acting within the scope of their employment, in furtherance of their job duties and on behalf of the City of New York when they engaged Plaintiff and committed the acts complained of herein.

119. The City of New York and the NYPD, including the Chief of Police, knew, or with any diligent inquiry should have known, and had actual and/or constructive notice that Defendants were prone to the use of unlawful and excessive force, as well as commit assault and battery, but failed to do anything to train, monitor, supervise, or properly investigate these officers so as to prevent the predictable use of excessive force upon Plaintiff as a continuation of their pattern of unlawful use of force.

120. The failure of the City of New York and the NYPD to meaningfully respond to and investigate these complaints is tantamount to a policy of encouragement and tolerance for excessive and unlawful force.

121. The violation of Plaintiff's rights as described herein are also an expected and natural consequence of City of New York/NYPD's failure to discipline, monitor and supervise its officers.

122. Given the lawsuit, apparent Internal Affairs and CCRB histories of the Defendant officers, the City of New York, NYPD, its Chief of Police and policy makers knew that Defendant-Officers needed discipline, training, supervision and monitoring, but failed to provide same.

123. In light of the foregoing, had the City of New York and NYPD and its policy makers provided additional monitoring, training and supervision for the Defendant officers, the individual Defendant officers would not have had occasion to violate Plaintiff's rights and commit the acts complained of herein, and but for the Defendant City's deliberate indifference to the obvious risk posed by individual Defendant officers, Plaintiff's rights would not have been violated. This includes not only providing additional training, but also removing these officers from contact with the public and/or ensuring that a supervisor was consulted before the use of any force or arrest.

124. In addition, the City of New York and the NYPD and the Defendant-Officers acted under color of law pursuant to an official policy or custom and practice of the NYPD whereby the use of unlawful and excessive force was permitted, tolerated, and condoned, and intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control, monitor, and discipline on a continuing basis their employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully using excessive force upon Plaintiff and violating her rights to protest and free speech.

125. Defendant City of New York also enacted policies, customs and procedures, directly and by tacitly approving the unlawful use of force by not stopping it, with the aim to unlawfully inhibit it. Moreover, the City of New York has employed, and tacitly approved, unlawful violence as a response to protesters exercising their rights to freedom of speech, assembly, and protest.

126. As a direct and proximate result of the above-described impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, as well State and common law rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

127. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## COUNT VI-FAILURE TO INTERVENE

128. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

129. Each of the Defendant-Officers engaged in the use of excessive force and assault of the Plaintiff and a violation of her rights.

130. While each Defendant-Officer was engaged in the use of excessive force and the violation of Plaintiff's rights as alleged herein, those who were not using force against Plaintiff failed to

intervene to prevent the use of excessive force in violation of Plaintiff's rights, despite an opportunity to do so.

131. The Defendant-Officers watched as Plaintiff was unlawfully subjected to excessive, unnecessary, and unlawful force.

132. Each Defendant had an opportunity to intervene as the use of excessive, unnecessary and unlawful force was being deployed against Plaintiff in front of them and within their immediate area. Each Officer failed to instruct other officers not to use force or physically restrain the officers from using force.

133. Rather than intervene to stop the use of excessive force and the violation of Plaintiff's rights as alleged in this Complaint and as the law requires, the Defendant officers did nothing.

134. As a direct and proximate result of the above conduct, Plaintiff suffered personal injuries, violation of her common law, State law and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

135. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## COUNT VII. UNLAWFUL ARREST, FALSE ARREST, FALSE IMPRISONMENT UNLAWFUL SEARCH AND SEIZURE

136. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

137. Defendant-Officers engaged in an unlawful arrest and seizure of Plaintiff.

138. Defendant-Officers detained and arrested Plaintiff without probable cause to do so.

139. Each Officer seized Plaintiff without any probable cause or legal justification to do so.

140. No Defendant obtained a warrant for Plaintiff's arrest, and nor did they have any legal justification to stop, seize, detain, arrest, or prosecute Plaintiff.

141. Plaintiff did not consent to the unlawful arrest and seizure.

142. The false and frivolous charges filed against Plaintiff were dismissed.

143. As a direct and proximate result of the above impermissible conduct, Plaintiff suffered personal injuries, violation of her common law, State law, and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

144. As a result of Defendants' unlawful conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## COUNT VIII. NEGLIGENCE/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

145. Plaintiff repeats and realleges each and every Paragraph as if fully set forth herein.

146. The officers were negligent in their interaction with the Plaintiff, including but not limited to, using force inappropriately, accidentally and recklessly.

147. Officers approached Plaintiff aggressively, threw her to the ground, assaulted her, stepped on her and arrested here. She suffered severe emotional and physical injuries.

148. Defendants were negligent in how they treated Plaintiff, without any justification for doing so.

149. Defendants should not have used any force against Plaintiff and taken other acts that inhibited the exercise of her rights and violated her rights.

150. Defendants deviated from acceptable standards in using force in the way that they did, including but not limited to assaulting the Plaintiff.

151. To the extent that Defendants subjected Plaintiff to unintentional or unnecessary use of force, Defendants acts were per se negligent and grossly negligent.

152. The Defendants' actions were not within prevalent guidelines for the use of force.

153.     Moreover, in these circumstances, where Plaintiff was not pointing a weapon at the Defendants or posing a threat to them, a reasonable officer would not have used any force upon Plaintiff.

154.     Defendants' actions were the proximate cause of Plaintiff's significant injuries.

155.     Defendants' actions caused Plaintiff severe permanent physical injuries and significant emotional distress.

156.     As a direct and proximate result of the above conduct, Plaintiff suffered personal injuries, violation of her rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

157.     As a result of Defendants' conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**WHEREFORE,** Plaintiff demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiff arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages against the individual Defendant-Officers where permissible by law;

(c) interest, both pre-judgment and post-judgment;

(d) a declaration that Defendant's violated the rights of Plaintiff;

(e) an Injunction/Order prohibiting the Defendants from violating the rights of protesters, and amending their policies to inhibit the violation of rights as alleged herein;

(f) attorney's fees and costs; and

(g) all other such relief as this Court may deem appropriate, equitable, and just.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues in this action that are so triable

pursuant to 42 U.S.C. § 1981 and Title VII, civil Rights Act of 1991, and any other applicable

statute and regulation.

Dated: April 29, 2025

Respectfully submitted,
The Aboushi Law Firm PLLC
s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508
Aymen@Aboushi.com
*Attorneys for Plaintiff*